**BOWMAN v. GLENN, Collector of Internal Revenue.**

**No. 1491.**

United States District Court
W. D. Kentucky, Louisville Division.

May 20, 1949.

Davis W. Edwards, Henry H. Mathis, Louisville, Ky., for plaintiff.

David C. Walls, U. S. Atty., Matthew O. Henchey, Asst. U. S. Atty., Louisville, Ky., Andrew D. Sharpe, Henry L. Spencer, Sp. Assts. to Atty. Gen., for defendant.

SHELBOURNE, Chief Judge.

The question for decision in this case is thus expressed by the plaintiff—

"Did Congress intend, in the use of the words 'Corporation' and 'Taxpayer', as appearing in Section 710 of the Internal Revenue Code, 26 U.S.C.A. § 710, to exclude corporations in process of liquidation."

As expressed by defendant, the question for decision is—

"Whether a corporation which remains in the process of liquidation over a period of years, while apparently carrying on no business activity, may continue each year to carry back a large excess profits tax credit, determined on the net income method, simply by retaining its corporation form and doing nothing."

The facts are not in dispute and are as follows—

A. H. Bowman and Company, a Kentucky corporation, was engaged in the transfer business in the City of Louisville, Kentucky. It acquired and owned in October 1944, motor equipment, land, building and certain intangibles.

In October 1944, plaintiff sold its drays and motor equipment to a newly formed corporation, the Bowman Company and thereafter did not engage in the transfer business.

On August 3, 1945, the directors and stockholders, by resolution, recorded the in-

tention of the Board of Directors and stockholders completely to liquidate "as soon as its obligations are reasonably at an end and the balance of its property disposed."

That resolution provided for partial distribution of the capital assets among the stockholders as a part of complete liquidation. There was made the distribution among the stockholders in the following amounts and on the following dates—

| August 3, 1945 | $66,000 |
| April 5, 1946 | 12,200 |
| June 5, 1946 | 15,315.58 |
| Oct. 18, 1946 | 17,932.48 |

In the above distribution, the real estate, stocks and bonds were distributed in kind.

In the year 1945 and 1946, the income of the company consisted solely of dividends from its stock, interest payments on its bonds and rental from its real estate.

For the year 1945, plaintiff claimed an unused excess-profits credit, which it sought to have carried back as a credit against excess-profits net income for the year 1943. For the taxable year 1946, plaintiff sought a credit carry-back of its unused excess-profits for the year 1944. The exact amount of the credit will have to be determined by recomputation.

## Conclusions of Law

Paragraph 1 of sub-section (a) Section 710, Title 26 U.S.C.A. provides—

"There shall be levied, collected, and paid, for each taxable year, upon the adjusted excess-profits net income, as defined in subsection (b), of every corporation (except a corporation exempt under section 727) a tax equal to whichever of the following amounts is the lesser."

Section 710(c) (3) (A) provided that an unused excess-profits credit, in any year, might be carried back and credited as an unused excess-profits credit, first to the second preceding year and the balance, if any, to the next preceding year. A similar provision was also made for a carry-forward over a period of two succeding years.

It is contended by defendant that plaintiff ceased business October 2, 1944, im-

mediately following the sale of its transfer equipment and that the distribution of the assets could then have been made as completely and effectively as they were subsequently distributed in the years 1945 and 1946.

Defendant claims that a corporation, by merely retaining its corporate form and engaging in no business activity, may not carry back excess-profits tax credits, mainly for the reason that Congress did not intend by the legislation to extend the carry back to corporations which had ceased productive activity, and thereby enable such corporations to obtain a substantial profit at the expense of government revenue; claiming that the relief provided by the Act was intended only for those taxpayers whose activities were continued throughout the war years and the ensuing years of peace.

The Collector relied upon the case of Wier Long Leaf Lumber Company v. Commissioner, 9 T.C. 990, in which the tax court held—

"It was not, however, reasonably to be anticipated in 1942, when section 710(c) (3) (A) of the Code was enacted, that during the feverish activity of a short war period many corporations would liquidate. Furthermore, to permit the carry-back of excess profits credits by liquidating corporations so as to refund excess profits taxes already collected would seriously militate against the stability of war revenue and the anti-inflationary and reconversion purposes of the excess profits tax law itself.

"Therefore, it is our opinion that any court, in deciding the question of the allowance of the excess profits tax carry-back credit to liquidating corporation, is justified in inquiring whether or not the terms 'taxpayer' and 'corporation' used in the excess profits tax law provisions included liquidating corporations for the purpose of the carry-back credit. Such inquiry is not for the purpose of reading something into the act 'which is not there,' but to define the terms 'taxpayer' and 'corporation' as used in the statute."

In the subsequent case of Mesaba-Cliffs Mining Company v. Commissioner, 10 T.C. 1010, the tax court approved its holding

in the Weir Long Leaf Lumber case and said—

"We think that the statutory provisions under consideration should be construed as making the excess profits credit carry-over, as well as the carry-back, available only to those taxpayers who during both the taxable period and the preceding or succeeding periods have maintained a normal going business, devoted substantially to the production of profits. No other construction would be consonant with the manifest purpose of the statute."

The Weir Long Leaf Lumber case was appealed to the Court of Appeals of the Fifth Circuit and was affirmed in part and reversed in part by that Court (one Judge dissenting) March 17, 1949, 173 F.2d 549, 551. The Court said—

" * * * if it appears that the corporation is a corporation in name and semblance only, without corporate substance and serving no real corporate purpose, it must, though not formally dissolved, be treated as dissolved de facto."

The Court of Appeals of the Sixth Circuit, in the case of United States v. Cummins Distilleries Corp., 166 F.2d 17, 20, makes two statements that we think are applicable to the consideration of this case. Judge Simons said—

"It has been held from an early date that a taxpayer has the legal right to decrease the amount of what otherwise would be his taxes or altogether avoid them by means which the law permits. United States v. Isham, 17 Wall. 496, 506, 21 L.Ed. 728. The principle was reaffirmed in Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355, was recently restated in Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed.

670, 164 A.L.R. 1135, and has been applied in numerous Circuit Court of Appeals cases.

The other statement referred to in the Cummins opinion is—

"The government may look upon actualities, and upon determining that the form employed is unreal may disregard the effect of the fiction upon tax liability. Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406."

Looking at the actualities, as disclosed by the agreed facts in this case, the A. H. Bowman Company sold a major portion of its assets in October 1944, but took no legal steps evidencing the intention to effect a legal dissolution until August 1945. Actually, the period covered by its dissolution—from October 19, 1944, when it sold its assets, until the final dissolution—is not an unusually long period of time for the dissolution of a corporation with assets comparable to the Bowman Company.

In Section 727 of the Act, corporations within any of seven classifications, were specifically excepted.

Plaintiff forcefully argues that had Congress intended to exempt corporations in liquidation, it would have added that class to its list of exemptions. Nothing appears in the actualities presented in the liquidation of this corporation to indicate that it was needlessly prolonged or purposely extended to take advantage of a provision of the tax law, for which the language of the Act did not give it ample authority.

It is therefore concluded that plaintiff is entitled to carry back to the tax years 1943 and 1944, the credits accruing in the years 1945 and 1946.

Judgment will be allowed for the amounts shown by the recomputation which both parties say is necessary.